IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| ANGELA DAWN JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-03239-CV-S-ODS |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

<u>ORDER AND OPINION REVERSING COMMISSIONER'S
FINAL DECISION AND AWARDING BENEFITS</u>

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her applications for disability insurance benefits and supplemental security income. For the following reasons, the Commissioner's decision is reversed, and the case is remanded with instruction to award benefits to Plaintiff.

## I.  STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited to a determination of whether the decision is "supported by substantial evidence on the record as a whole. Substantial evidence is less than a preponderance but…enough that a reasonable mind would find it adequate to support the conclusion." *Andrews v. Colvin,* 791 F.3d 923, 928 (8th Cir. 2015) (citations omitted). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). Though advantageous to the Commissioner, this standard also requires the Court consider evidence that fairly detracts from the final decision. *Anderson v. Astrue,* 696 F.3d 790, 793 (8th Cir. 2015) (citation omitted). Substantial evidence means "more than a mere scintilla" of evidence; it is relevant evidence a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## II. BACKGROUND

Plaintiff was born in 1975 and has a high school education. R. at 31, 76, 88, 91, 103, 193, 200, 224. Plaintiff last worked in August 2013. R. at 82, 87, 194, 295. She previously worked as a data entry clerk, sewing machine operator, daycare worker, embroidery machine operator, and credit clerk. R. at 50, 88, 103, 224, 232-37.

In June 2014, Plaintiff applied for disability insurance benefits. An administrative law judge ("ALJ") found Plaintiff's severe impairments included major depressive disorder, adjustment disorder, panic disorder with agoraphobia, and obesity. R. at 64. The ALJ concluded Plaintiff was disabled from August 30, 2013, through April 14, 2015. R. at 57-72. However, because Plaintiff's condition had improved and she only had mild restrictions since April 15, 2015, the ALJ determined Plaintiff was no longer disabled as of April 15, 2015. *Id.*

In April 2016, Plaintiff applied for disability insurance benefits and supplemental security income, alleging she became disabled on April 15, 2015. R. at 191-206. After her applications were denied, she requested a hearing. R. at 110-15, 118-19. In January 2018, ALJ James Francis Gillet conducted a hearing. R. at 29-56. In July 2018, the ALJ issued his decision determining Plaintiff was not disabled. R. at 7-22. He found Plaintiff's severe impairments were "morbid obesity; plantar fasciitis bilaterally; equinas bilaterally; calcaneal spurring bilaterally; metatarsus bilaterally; right shoulder tendinopathy and degenerative joint disease; asthma; fibromyalgia; major depressive disorder and reactive depressive disorder, situational; bipolar affective disorder; generalized anxiety disorder; panic disorder; and cigarette dependence." R. at 13. The ALJ decided Plaintiff has the residual functional capacity ("RFC") to perform sedentary work (defined in 20 C.F.R. 1567(a) and 416.967(a)) with the following exceptions:

> [L]ift and carry five pounds frequently and 10 pounds occasionally; stand and walk two hours in an eight-hour workday, but is limited to 15 minutes at any one time; sit six hours in an eight-hour workday, but is limited to 120 minutes and requires the ability to shift at will but can remain on task while shifting; no pushing or pulling of levers with the upper extremities bilaterally; no foot control operations with the lower extremities bilaterally; never climb ropes, ladders, or scaffolds; use of ramps or stairs, stooping, and crouching is limited to 15 percent of the workday; no kneeling or crawling; frequent reaching bilaterally, but reaching overhead with the right upper extremity is limited to 15 percent of the workday; no exposure to extreme cold, use of air or vibrating tools, or work in hazardous conditions or at unprotected heights or around moving machinery, meaning

2

machinery that does not have a fixed base and includes motor vehicles; simple, routine, and repetitive tasks with simple decision making; no interaction with the public; and no more than occasional interaction with co-workers and supervisors, all interaction must be brief and superficial such as daily pleasantries or directly related to work product.

R. at 15-16. Based on the RFC and the vocational expert's ("VE") testimony at the hearing, the ALJ concluded Plaintiff could work as a document preparer, table worker, stuffer, addresser, cutter/paster, and pneumatic tube operator. R. at 20-21, 47-55. Plaintiff unsuccessfully appealed the ALJ's decision to the Appeals Council. R. at 1-6. She now appeals to this Court.

### III. DISCUSSION

Plaintiff argues the ALJ erred by affording "little weight" to her treating psychologist's opinions and affording "significant weight" to the opinions of the consultative examiner and state agency consultants. Generally, a treating source's opinion is given more weight than other sources in a disability proceeding. 20 C.F.R. § 404.1527(c)(2). A treating source's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record. *Anderson*, 696 F.3d at 793-94; *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996). The ALJ must "give good reasons" to explain the weight given the treating source's opinion. 20 C.F.R. § 404.1527(c)(2); *Anderson*, 696 F.3d at 793.

The gave "little weight" to the opinions of Plaintiff's treating psychologist, Linda Davidson, M.S., because she "did not provide an explanation for her opinions." R. at 18. The ALJ points to two documents. First, he discusses a "treatment summary" Davidson prepared in March 2014. R. at 868-70. The issue before the ALJ was whether Plaintiff was disabled as of April 15, 2015. Thus, the March 2014 treatment summary does not address Plaintiff's conditions and symptoms during the applicable timeframe. Perhaps more significant, the treatment summary was completed during a time when Plaintiff was deemed, by another ALJ, to be disabled. R. at 57-72. Regardless, in the treatment summary, Davidson observed Plaintiff had a "diminished ability to concentrate and focus on a daily basis" and her "symptomology is significantly impairing her interpersonal relationships as well as her ability to return to the work environment." R. at 18, 870.

3

Second, the ALJ points to the Medical Source Statement – Mental ("MSS") Davidson executed in January 2018. R. at 18, 873-74. In the MSS, Davidson opined Plaintiff was "extremely limited"[1] in her abilities to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," "complete a normal workday… without interruption from psychological based symptoms and to perform at a consistent pace," and "interact appropriately with the general public." R. at 874. Davidson also determined Plaintiff's abilities to do the following were "markedly limited"[2]: "carry out detailed instructions," "maintain attention and concentration for extended periods," "work in coordination with or proximity to others without being distracted by them," "accept instructions and respond appropriately to criticism from supervisors," "get along with coworkers," "respond appropriately to changes in the work setting," and "set realistic goals or make plans independently of others." *Id*. Davidson found Plaintiff was "moderately limited"[3] in her abilities to "remember locations and work-like procedures," "sustain an ordinary routine without special supervision," "make simple work related decisions," "ask simple questions or request assistance," "maintain socially appropriate behavior," and "understand," "remember" and "carry out very short and simple instructions." R. at 873-74.

Davidson began treating Plaintiff in 2013. R. at 868-70; Doc. #9, at 2, 15. Between April 2016[4] and December 2017, Plaintiff was seen and treated by Davidson

---

[1] "Extremely limited" is defined as an "[i]mpairment level preclude[s] useful functioning in this category. Considered to be 3 standard deviations below the norm, or 90% overall reduction in performance." R. at 873.
[2] "Markedly limited" is "[m]ore than Moderate, but less than extreme resulting in limitations that seriously interfere[ ] with the ability to function independently. Considered to be 2 standard deviations below the norm, or 60% overall reduction in performance." R. at 873.
[3] "Moderately limited" indicates "[i]mpairment levels are compatible with some, but not all, useful functioning. Considered to be 1 standard deviation below the norm, or 30% overall reduction in performance." R. at 873.
[4] The Court was not provided Davidson's records before April 27, 2016. Based on the previous ALJ's decision (which found Plaintiff was disabled through April 14, 2015), Davidson's records from April 2014 through September 2015 were considered when evaluating Plaintiff's first application for disability insurance benefits. R. at 65-67, 69-70. While that ALJ afforded "partial weight" to Davidson's opinions after April 14, 2015 (when the ALJ concluded Plaintiff was no longer disabled), he did not express what weight he afforded Davidson's opinions before April 15, 2015. *See* R. at 64-72.

4

on thirty-seven occasions.  R. at 831-67.  Pursuant to her clinical notes from these sessions, Davidson observed and opined, among other things, the following:

- Affect, mood, and demeanor were observed as "flat," "depressed," "sad," "lethargic," "tired," "irritable," "dysthymic," and/or "more anxious and nervous,"
- "continues to exhibit abnormally persistent depression"
- "continues to struggle to implement [a] schedule when she is fighting both the anxiety and depression"
- "unable to follow through with establishing a routine pattern of daily activities"
- "memory is getting worse"
- "feels 'foggy' a lot of the time"
- "finds it hard to motivate herself to do much beyond the basics"
- "There have been days she has slept most of the time"
- "having more difficulty concentrating"
- "appeared tired and lethargic"
- "is sleeping more and when she is awake is very 'antsy and restless'"
- "is tired and is sleeping several more hours than usual"
- "crying more frequently and at times is not sure of the reason, other than she feels bad"
- "continues to have periods of crying"
- "overall motivation remains low" or "poor"
- "not motivated to do much but sleep"
- "unable to experience any joy, even though her life has improved in many ways"
- "it is hard for her to experience happiness on anything but a temporary level"
- "she is more paranoid and suspicious of others"
- "Depression and anger remain the primary issues"
- "depression fluctuates as to intensity, however, it continues to interfere with her day to day functioning and still hinders her participation with family at times"
- "depression and anxiety continue to interfere with her daily functioning"
- "depression and anxiety create[ ] moderate to severe impairment in social, relational, and occupational endeavors"
- health issues have "increased her anxiety" and "compounded the situation"
- "symptoms remain relatively unchanged"

R. at 831-67.  While Davidson noted some positive changes, better demeanor, or slow progress (*see* R. at 831, 845-46, 851-53, 863-64), the overwhelming majority of Davidson's notes show Plaintiff struggles with depression and anxiety and has

5

significant limitations (*see* R. at 832-44, 847-50, 854-62, 765-67).  Contrary to the ALJ's finding, Davidson's opinions are supported by more than thirty hours she spent with and treated Plaintiff over the course of less than two years.

The ALJ also discounted Davidson's opinions because "the medical evidence shows the claimant has less limitation than" Davidson "determined."  R. at 18.  In support, the ALJ cited one record as an "example" – i.e., the July 2016 consultative examination by Bryce T. Gray, Psy.D.  R. at 18, 429.  To reach his findings, Gray conducted a clinical interview of Plaintiff, observed her behavior and reviewed her records.  R. at 427-31.  Gray found there are "some current restrictions" in Plaintiff's daily activities, but she had "no difficulty appropriately interacting socially with others but lacks the desire," "no problems completing a simple three-step direction," and "minimal problems sustaining attention and remaining on task."  R. at 430.  He opined Plaintiff's "mental disorder would most likely interfere with her ability to make responsible and consistent financial decisions."  R. at 431.  But Gray also "estimated" Plaintiff was "capable of effectively understanding and remembering more complex instructions."  R. at 430.  No "medical evidence," other than this consultative examination, is cited by the ALJ to support his determination that Davidson's opinions should be discounted.  Instead, the medical evidence tends to support Davidson's opinions.  *See, e.g.,* R. at 351, 355, 371-421, 434-45, 464, 479-507, 708, 741, 786-87, 800, 822.

Contrary to the ALJ's determinations, Davidson's opinions are supported by her copious clinical notes, and her opinions are supported by the weight of the remaining evidence in the record.  In addition, the ALJ's failed to provide good reasons for affording "little weight" to Davidson's opinions.  As a result, the Court finds the ALJ erred in affording little weight to Davidson's opinions.  Furthermore, because the ALJ erred in affording little weight to Davidson's opinions, the ALJ's RFC was not based on all relevant evidence, and therefore, is not supported by substantial evidence.  *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) (citation omitted) (stating a claimant's RFC must be "based on all relevant evidence.").

## IV.    CONCLUSION

For the foregoing reasons, the Court finds there is not substantial evidence in the record as a whole to support the ALJ's decision.  The Court finds further proceedings

6

would serve no useful purpose and would only delay receipt of benefits. Accordingly, the Court reverses the ALJ's decision and remands the case with instruction to award benefits to Plaintiff.

IT IS SO ORDERED.

DATE: February 18, 2020

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT